IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


ROBERT BUTH                                                                          PLAINTIFF


        v.                              CIVIL NO. 10-5166

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                      DEFENDANT


**MEMORANDUM OPINION**

Plaintiff, Robert Buth, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff protectively filed his current applications for DIB and SSI on October 17, 2008, alleging an inability to work since July 2, 2008, due to herniated discs in his back, depression, Bi-Polar Disorder, panic attacks, carpal tunnel syndrome, arthritis, pancreatitis, poor memory, and a hernia. (Tr. 116-118, 121-123, 194). An administrative hearing was held on September 15, 2009, at which Plaintiff appeared with counsel and testified. (Tr. 18-45).

By written decision dated January 28, 2010, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 55). Specifically, the ALJ found Plaintiff had the following severe impairments: pancreatitis, diabetes mellitus, arthritis, and a mood disorder. However, after reviewing all of the evidence presented, he determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 55). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> occasionally lift/carry 20 pounds and frequently 10, sit for 6 hours in an 8 hour workday and stand/walk for 6 hours, and frequently climb, balance, crawl, kneel, stoop, and crouch. He has moderate difficulties in maintaining social functioning and concentration, persistence and pace. He is moderately limited in the ability to understand, remember, and carry out detailed instructions, respond appropriately to usual work situations and routine work changes, and interact appropriately with supervisors and co-workers. Moderately limited means there is more than a slight limitation, but the person can perform in a generally satisfactory manner. He can do work where interpersonal contact is incidental to the work performed, complexity of tasks is learned and performed by rote with few variables and little judgment required. Supervision required is simple, direct and concrete.

(Tr. 57). With the help of a vocational expert, the ALJ determined Plaintiff could perform other work as a routing clerk/package mail sorter, an assembly production worker, and a helper/production worker. (Tr. 61, 205).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on July 26, 2010. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 10, 11).

AO72A
(Rev. 8/82)

**II.     Evidence Presented:**

At the administrative hearing before the ALJ on September 15, 2009, Plaintiff, who was forty-seven years of age, testified that he had obtained a high school education. (Tr. 21). The record reflects Plaintiff's past work consists of work as a laborer and a forklift driver. (Tr. 193-194).

The pertinent medical evidence in this case reflects the following. On October 19, 2008, Plaintiff was admitted into Washington Regional Medical Center with complaints of abdominal pain, nausea, vomiting and an elevated amylase. (Tr. 207-262). Plaintiff was noted to have a previous history of pancreatitis and a long-standing history of severe alcohol abuse. Plaintiff underwent a CT scan that revealed acute pancreatitis. Plaintiff was placed in the Intensive Care unit after he developed adult respiratory distress syndrome, probable pancreatic inflammation and possible necrosis. Plaintiff was placed on broad-spectrum antibiotics; was seen by a gastroenterologist, a general surgeon and an infectious disease consultant; underwent surgical interventions for necrotizing pancreatitis; and underwent a splenectomy, a partial pancreatectomy and a cholecystectomy. Dr. Anthony Williams noted that postoperatively, Plaintiff had a "long and rocky" course. Dr. Williams noted Plaintiff developed a bile leak, an abdominal abscess, and a high fever. Dr. Williams noted Plaintiff also had an open abdominal wound that was healing well. Plaintiff was also noted to have diabetes, most likely secondary to pancreatic deficiency. Dr. Williams reported that while admitted, Plaintiff developed deep venous thrombosis (DVT), and had been anti-coagulated appropriately. On December 10, 2008, Plaintiff's discharge date, Dr. Williams noted Plaintiff was doing quite well and had been doing well for the past couple of days. Dr. Williams discharged Plaintiff in improved condition. Dr.

Williams noted Plaintiff was to see Dr. Ronald Jay Mullins in five to seven days, and that he was to receive home health for wound care.

On December 16, 2008, Plaintiff presented to the UAMS Family Medical Center for a hospital follow-up. (Tr. 266-). Dr. Leslie Stone noted Plaintiff was in to establish primary care and for a hospital follow-up. Dr. Stone noted Plaintiff had been in the hospital for the past two months. Dr. Stone noted Plaintiff was originally admitted for alcoholic pancreatitis and that Plaintiff reported he had had multiple admissions for this in the past. Dr. Stone noted Plaintiff had a complicated hospital course and that Plaintiff was now insulin dependent. Dr. Stone noted that while admitted Plaintiff developed DVTs of both lower extremities and was started on Coumadin. Dr. Stone noted Plaintiff had done well since discharge and that he had an appointment with Dr. Mullins to have an abdominal surgical drain removed. Dr. Stone noted Plaintiff's compliance to his new medications had been excellent. Plaintiff reported he continued to abstain from alcohol and was determined to stay clean. Dr. Stone noted Plaintiff's blood sugars had been fair. Plaintiff reported some incisional tenderness and occasional nausea, but stated that overall he was feeling well. Plaintiff denied fevers, chills, sweats, fatigue, malaise, or weight loss. Dr. Stone noted Plaintiff had normal strength and range of motion of his extremities and no joint enlargement or tenderness. Plaintiff's medications were re-filled and he was referred to Dr. Schnieder for diabetes education and Coumadin management.

On December 18, 2008, Plaintiff was seen at the Ozark Surgical Associates by Dr. Mullins. (Tr. 284). Dr. Mullins noted Plaintiff's recent hospitalization and that Plaintiff had a drain in his right upper quadrant. Plaintiff reported he was doing well. Plaintiff denied nausea or vomiting, and reported he was gaining weight. Dr. Mullins impression stated necrotizing

pancreatitis, status post cholecystectomy, and biliary with placement of internal biliary stent. Dr. Mullins noted that he was going to leave Plaintiff's drain in, and would continue to follow Plaintiff as an outpatient. Dr. Mullins opined that Plaintiff would need his stent removed in the next six to eight weeks.

On December 22, 2008, Plaintiff was seen in the UAMS Family Medical Center for a Coumadin visit. (Tr. 265). Plaintiff reported no bruising or bleeding, changes in vitamin K content of diet, or missed Warfarin doses. Plaintiff did report a medication change consisting of the addition of Vicodin and Phenergan by the surgeon. Eric Schneider, PharmD noted Plaintiff was to continue with his medication, and to return in two weeks.

On December 22, 2008, Plaintiff was also seen by Dr. Mullins. (Tr. 285). Dr. Mullins noted that Plaintiff had had a bile leak that was managed with an internal stent, as well as placement of a drain. Dr. Mullins noted that there was no further bile drainage and that Plaintiff was doing well overall. Dr. Mullins noted Plaintiff's abdomen was soft and nontender, but did have an open, clean wound. Dr. Mullins pulled Plaintiff's drain out, and indicated that he could continue to see Plaintiff for outpatient wound care.

On January 5, 2009, Plaintiff was seen at the UAMS Family Medical Center for a Coumadin visit. (Tr. 263-264). The clinic notes indicated Plaintiff required anti-coagulation for DVT. Plaintiff reported he had had a better appetite since his discharge from the hospital. Dr. Schneider noted that Plaintiff's blood sugars had increased as his appetite had increased. Dr. Schneider indicated that Plaintiff's levels were subtherapeutic so Plaintiff's Warfarin dosage was increased. Plaintiff was also given instructions regarding his diabetes. Plaintiff was noted to

AO72A
(Rev. 8/82)

have an appointment with Dr. Stone on the 16th. Plaintiff reported he was out of his discharge medication, so his medication was re-filled.

On January 5, 2009, Dr. Mullins noted that Plaintiff's abdominal wound was clean and looked good. (Tr. 286). Plaintiff was to continue with outpatient wound care.

On January 29, 2009, Dr. Bill F. Payne, a non-examining medical consultant, completed a RFC assessment stating that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds; could stand and/or walk for a total of about six hours in an eight-hour workday; could sit for a total of about six hours in an eight-hour workday; and could push or pull unlimited, other than as shown for lift and/or carry. (Tr. 276-283). Dr. Payne noted that postural, visual, communicative or environmental limitations were not evident. Dr. Payne made the following additional comments:

> 46 y/o clmt who has a hx of ETOH abuse & pancreatitis. HOSP 10/08 due to acute pancreatitis & necrotizing pancreatitis with abscess formation. Developed acute respiratory failure requiring temporary ventilator. Underwent cholecystectomy, splenectomy, & partial pancreatectomy. Developed bil LE DVTs & started on Coumadin. F/up 12/08 noted clmt doing well since discharge & is compliant with treatment, as well as abstaining from ETOH. PE noted heart normal, lungs clear, full ROM & good strength UE/LE. Clmt weighs 182 lbs.
>
> ADLS completed while hospitalized & are very limited.
>
> PROJECTED LIGHT RFC

(Tr. 283). On May 26, 2009, after reviewing the record, Dr. Jerry Mann affirmed Dr. Payne's January 29, 2009 assessment. (Tr. 309).

On April 9, 2009, Plaintiff underwent a consultative mental diagnostic evaluation performed by Dr. Terry L. Efird. (Tr. 287-290). Dr. Efird noted Plaintiff reportedly drove himself to the evaluation. Dr. Efird noted that when Plaintiff was asked about his mental

-6-

allegations, Plaintiff responded "I keep getting told I'm crazy. Basically, it's just physical." Plaintiff reported he had applied for disability benefits secondary to having a herniated disc, diabetes and extensive surgical procedures last Fall. Plaintiff reported he had been a "real hard alcoholic." Plaintiff characterized his mood as "depressed most of the time." Plaintiff reported a low energy level and having feelings of worthlessness. Plaintiff reported having suicidal ideations about twice a week, but Plaintiff denied having a plan to act on those thoughts. Plaintiff did report a history of suicide attempts in the past. Plaintiff reported he had been staying with his ex-wife and that his ability to perform basic self-care tasks satisfactorily was endorsed. Plaintiff reported he had received seven to eight DWIs. Plaintiff reported he had mainly worked in construction, but his last job was as a maintenance worker for McDonald's in June of 2008. Plaintiff reported he had been terminated from that job due to his drinking on the job. Plaintiff reported that he preferred not to deal with people. Dr. Efird's conclusions state as follows:

> As previously noted, claimant reported and/or endorsed significant symptom based criteria for a diagnosis of major depressive disorder, moderate to severe. Some degree of difficulty with anxiety was also indicated. Therefore, a diagnosis of anxiety disorder NOS will also be provided at this time. However, the degree to which mental symptoms impair adaptive functioning was questionable. Historically, the primary factor impairing this claimant's functioning was most likely alcohol-related, at least on an overt level.

(Tr. 289). Dr. Efird gave Plaintiff s global assessment of functioning score of 50-60.

With regard to adaptive functioning, Dr. Efird noted that Plaintiff reported having the ability to drive unfamiliar routes, but indicated that he sometimes experienced anxiety with traffic. Plaintiff reported he was able to shop independently and to perform most activities of daily living. Dr. Efird opined Plaintiff had the capacity to perform basic cognitive tasks required

for basic work-like activities. Dr. Efird noted that Plaintiff's immediate auditory attention span was remarkably below a level of expectation in comparison with his estimated intellectual functioning. Dr. Efird noted Plaintiff appeared to struggle remarkably on the task of digit span; however, Dr. Efird noted Plaintiff performed serial threes at a reasonable pace and without error. Dr. Efird noted that Plaintiff appeared to have the mental capacity to sustain persistence over a reasonable time frame if desired; and no remarkable problems with mental pace of performance was noted. Dr. Efird opined that the evaluation results likely represented a reasonable estimate of Plaintiff's current functioning.

On April 13, 2009, Dr. Jerry R. Henderson, a non-examining medical consultant, completed a psychiatric review technique form indicating Plaintiff had mild restrictions of his activities of daily living; moderate difficulties in maintaining social functioning; moderate deficiencies of concentration persistence or pace; and had no episodes of decompensation. (Tr. 291-304).

On the same date, Dr. Henderson also completed a mental RFC assessment stating Plaintiff had moderate limitations in the following areas: in the ability to understand and remember detailed instructions; in the ability to carry out detailed instructions; in the ability to maintain attention and concentration for extended periods; in the ability to sustain an ordinary routine without special supervision; in the ability to work in coordination with or proximity to others without being distracted by them; in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; in the ability to accept instructions and respond appropriately to criticism from supervisors; and in the ability to

respond appropriately to changes in the work place. (Tr. 305-308). Dr. Henderson had the additional comments:

> While the claimant has severe symptoms with associated limitations, the overall findings do not appear to support a meet or equaling of a listing. The preponderance of the evidence appears to support unskilled capacity.

(Tr. 308). On May 26, 2009, after reviewing the record, Dr. Kay Cogbill affirmed Dr. Henderson's April 13, 2009 assessment. (Tr. 310).

### III.   Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v.

Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

**IV.    Discussion:**

Plaintiff contends that the ALJ erred in concluding that the Plaintiff was not disabled. Defendant argues substantial evidence supports the ALJ's determination.

**A.    Subjective Complaints and Credibility Analysis:**

We now address the ALJ's assessment of Plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including

evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints. Although Plaintiff contends that his impairments were disabling, the evidence of record does not support this conclusion.

With regard to Plaintiff's pancreatitis and associated problems, the ALJ pointed out that the medical record revealed that Plaintiff was hospitalized and underwent several surgeries. However, the follow-up treatment notes indicated that Plaintiff was feeling well. The last treatment note dated January 5, 2009, indicated Plaintiff's abdominal wound was clean and looked good. After reviewing the entire evidence of record, the Court finds substantial evidence to support the ALJ's determination that Plaintiff's pancreatitis and associated problems were not disabling.

With regard to Plaintiff's alleged hand pain, the ALJ pointed out that the record is void of any treatment for Plaintiff's alleged hand pain and possible arthritis during the relevant time period. See Novotny v. Chater, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam) (failure to seek

AO72A
(Rev. 8/82)

treatment was inconsistent with allegations of pain). The record also revealed that Plaintiff's DVT and diabetes appeared to be controlled with medication. Brace v. Astrue, 578 F.3d 882, 885 (8th Cir. 2009) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.")(citations omitted). After reviewing the entire evidence of record, the Court finds substantial evidence to support the ALJ's determination that Plaintiff's hand pain, DVT and diabetes were not disabling.

As for Plaintiff's alleged depression and mood disorder, there is no medical evidence of record revealing that Plaintiff sought on-going and consistent treatment for his alleged mental impairments during the relevant time period. See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability). Furthermore, after evaluating Plaintiff Dr. Efird opined Plaintiff could perform basic cognitive tasks required for basic work-like activities. After reviewing the entire evidence of record, the Court finds substantial evidence to support the ALJ's determination that Plaintiff does not have a disabling mental impairment.

While Plaintiff alleged an inability to seek treatment due to a lack of finances, the record is void of any indication that Plaintiff had been denied treatment due to the lack of funds. Murphy v. Sullivan, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship). Plaintiff indicated that he was on the waiting list for a free clinic; however, Plaintiff put forth no evidence to show that he was in fact denied treatment due to his inability to pay.

Plaintiff's subjective complaints are also inconsistent with evidence regarding his daily activities. During his evaluation with Dr. Efird, Plaintiff reported that he was able to take care of his personal needs, to perform household chores satisfactorily, and to shop independently. Plaintiff also testified at the administrative hearing that his impairments did not affect his ability to perform housework, to dress himself, or to otherwise take care of himself. (Tr. 29).

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, he has not established that he is unable to engage in any gainful activity. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

**B.   RFC Assessment:**

We next turn to the ALJ's assessment of Plaintiff's RFC. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

AO72A
(Rev. 8/82)

In the present case, the ALJ considered the medical assessments of examining agency medical consultants, Plaintiff's subjective complaints, and his medical records when he determined Plaintiff could perform light work with limitations. Plaintiff's capacity to perform this level of work is supported by the fact that Plaintiff's examining physicians placed no restrictions on his activities that would preclude performing the RFC determined. See Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). Based on the record as a whole, we find substantial evidence to support the ALJ's RFC determination.

    **C.**    **Hypothetical Question to the Vocational Expert:**

We now look to the ALJ's determination that Plaintiff could perform substantial gainful employment within the national economy. We find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. See Long v. Chater, 108 F.3d 185, 188 (8th Cir. 1997); Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996). Accordingly, we find that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff was not disabled as he was able to perform work as a routing clerk/package mail sorter, an assembly production worker, and a helper/production worker. See Pickney, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**V.**    **Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should

AO72A
(Rev. 8/82)

be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 8th day of September 2011.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)